UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATONYA BYRD,

        Plaintiff,

v.                                                                  Case No. 8:20-cv-875-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

        Defendant.

_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability and DIB (Tr. 241-47). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 118, 137, 141-45, 148-53). Plaintiff then requested an administrative hearing (Tr. 155-56). Per Plaintiff's request, the ALJ held a

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

hearing at which Plaintiff appeared and testified (Tr. 71-104).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 8-30).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-7, 237-40).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is now ripe for review under 42 U.S.C. § 405(g).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1972, claimed disability beginning June 2, 2017 (Tr. 241).  Plaintiff obtained a college education (Tr. 266).  Plaintiff's past relevant work experience included work as an insurance manager (Tr. 22, 97, 267).  Plaintiff alleged disability due to major depressive disorder, obsessive-compulsive disorder, anxiety, herniated disc, arthritis in spine, chronic back and side pain on her righthand side, scar tissue due to carpal tunnel surgery, sleep dysfunction, hypertension, and seizures (Tr. 265).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022 and had not engaged in substantial gainful activity since June 2, 2017, the alleged onset date (Tr. 13).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, obesity, depression, and anxiety (Tr. 13).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff required a sit/stand option, meaning the ability to reposition or stand at will while remaining on task; could occasionally balance, kneel, stoop, crouch, crawl, and climb; could never climb ladders, ropes, or scaffolds; must avoid even moderate exposure to vibration and hazards; could not perform fast-paced or production work; could occasionally interact with supervisors and co-workers; and was limited to brief and superficial interaction with the public (Tr. 17).   In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that the record did not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations alleged by Plaintiff (Tr. 18).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 22).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a final assembler, an inspector, and a table worker (Tr. 23, 99). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled through the date of the decision (Tr. 23).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant

must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  A claimant is entitled to benefits only if unable to

perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.

Plaintiff presents a nuanced argument regarding the ALJ's purported failure to resolve an apparent conflict between the *Dictionary of Occupational Titles* ("DOT")[2] and the VE's testimony.   During the administrative hearing, the ALJ posed a hypothetical to the VE, including a sit or stand option, meaning that Plaintiff would be able to reposition or stand at will while remaining on task (Tr. 98).  Plaintiff contends that the VE's testimony was inconsistent with the DOT regarding the sit/stand option, as the DOT does not address the need for a sit/stand option, and the need to sit and stand at will would likely require Plaintiff to stoop more than occasionally throughout the workday.  As Plaintiff asserts, the VE did not address the inconsistency between his testimony and the DOT regarding the sit/stand option.  This is problematic, Plaintiff posits, because the jobs identified by the VE, as generally performed, do not require stooping.   *See* Final Assembler, DOT § 713.687-018, 1991 WL 679271; Dowel Inspector, DOT § 669.687-014, 1991 WL 686074; Table Worker, DOT § 739.687-192, 1991 WL 680217.  Given the sit/stand option and Plaintiff's anticipated need to stand more than one-third of the eight-hour workday, Plaintiff argues that she would necessarily have to stoop to perform tasks.  If she was required to perform more than occasional stooping, the jobs identified by the VE would be eliminated.  Based on this apparent disparity between the DOT and the VE's testimony, Plaintiff contends that the matter should be

---

[2]  "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require."  *Washington*, 906 F.3d at 1357 n.2.

remanded with directions to the ALJ to ask the VE whether Plaintiff could perform the jobs identified by the VE if Plaintiff needed to stand more than one-third of the day but could not stoop more than one-third of the day.

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (citation omitted). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted); *cf.* 20 C.F.R. § 404.1512(b)(3).

In doing so, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications[,]" including the DOT, published by the Department of Labor. 20 C.F.R. § 404.1566(d). An ALJ may also utilize the services of a VE or other specialist in making the determination at step five as to whether a claimant's work skills can be

used in other work and as to the specific occupations in which such skills can be used.  20 C.F.R. § 404.1566(e).  A VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments."  *Phillips*, 357 F.3d at 1240.  Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ consults a VE.  *See id.* at 1243.

Over the years, issues have arisen about the ALJ's duty to investigate and develop an adequate factual record to support a disability determination in cases where VE testimony is contradicted by the DOT, upon which the SSA frequently relies.  *See, generally, Washington*, 906 F.3d at 1355-61.  With the issuance of Social Security Ruling ("SSR") 00-4p, the SSA offered its policy interpretation regarding the issue.  *See id.* at 1356.  Under SSR 00-4p, when an apparent unresolved conflict exists between VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled."  2000 WL 1898704, at * 2 (Dec. 4, 2000).  The ALJ must inquire, on the record, whether a conflict exists.  *Id.*  If a conflict exists, the ALJ must resolve the conflict by determining whether the explanation provided by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the information contained in the DOT.  *Id.*  Reasonable explanations may include the availability of information about a particular job's requirements or about occupations not listed in the DOT

but available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling.  *Id.*

Recently, in considering the application of SSR 00-4p, the Eleventh Circuit concluded that ALJs maintain "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them."  *Washington*, 906 F.3d at 1356.  In carrying out that duty, the ALJ must do more than simply ask the VE whether his or her testimony is consistent with the DOT.  *Id.*  According to the Eleventh Circuit, when a conflict has been identified, SSR 00-4p requires the ALJ to provide a reasonable explanation for the discrepancy and to detail in the decision how the ALJ resolved the conflict.  *Id.*  The failure to do so means that the ALJ's decision, if based upon the contradicted VE testimony, is not supported by substantial evidence.  *Id.*

SSR 00-4p thus imposes a duty on the ALJ to identify and resolve "apparent conflicts" between DOT data and VE testimony.   *Id.* at 1362.   Under this framework, an "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony."  *Id.* at 1365.  "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case."  *Id.*

Here, prior to posing hypotheticals to the VE, the ALJ asked the VE whether he was familiar with the DOT, its companion publications, *Selected Characteristics of Occupations* and the revised DOT, and the SSA's definitions of sedentary, light,

medium, heavy, and very heavy work (Tr. 96).  The VE indicated that he was familiar (Tr. 96).  The ALJ then inquired whether the VE would alert the ALJ if his testimony was inconsistent with the DOT, to which the VE responded in the affirmative (Tr. 96-97).  Following that, the ALJ engaged in the following discussion with the VE:

> Q      All right, Mr. Bierley.  The first hypothetical, assume a person of the claimant's age, educational level, past work background, the claimant's same skills.  Assume further that the individual was able to work at the light exertional level with the following restrictions.  Sit or stand option, meaning being able to reposition or stand at will while remaining on-task; occasional postural, meaning occasionally balancing, kneeling, stooping, crouching, crawling, and climbing, except no climbing ladders, ropes, or scaffolds; must avoid even moderate exposure to vibration and hazards; no fast-paced or production work; occasional interaction with supervisors and coworkers; brief and superficial interaction with the public.
>          Do you need me to repeat any of the restrictions or limitations?
>
> A      Just was that occasional supervisors, Judge?
>
> Q      Occasional interaction with supervisors and coworkers, yes.
>
> A      Thank you.  No, I need nothing else repeated.
>
> Q      All right.  And could this hypothetical person perform the claimant's past work either –
>
> A      No.
>
> Q      -- as the claimant actually performed the work or as those occupations are generally performed in the national economy?
>
> A      I'm sorry for not letting you finish.
>
> Q      That's okay.  No worries.  Would there be other jobs in existence that this hypothetical person could perform?
>
> A      Not within the light category of employment.  There would be sedentary occupations that would fit the hypothetical.

> Q      Okay.  And can you give me three sedentary jobs?
>
> A      Yes.  Each of these would be sedentary, unskilled, SVP of 2.  A final assembler, final assembler *DOT* 713.687-018, 22,000 in the national economy; as well as an inspector, inspector *DOT* 669.687-014, 23,000 in the national economy; and also a table worker, table worker *DOT* 739.687-182, 20,000 in the national economy.
>
> Q      Thank you.  Can you tell me what the employer tolerance is for absenteeism and off-task behavior?
>
> A      With respect to absenteeism, if a worker misses more than one day per month consistently, that would exclude all occupations.  And if a worker is off-task for 15 percent or more of the time consistently, that would also exclude all occupations.

(Tr. 98-100).  Following the recitation of the hypothetical and the identification of jobs by the VE, Plaintiff's counsel asked the VE to identify the sources of the numbers of jobs that he listed (Tr. 99-100).  The VE indicated that he utilized three sources – statistics, *The Occupational Clinic Quarterly*, and the *Occupational Outlook Handbook* (Tr. 100).  The ALJ then conducted the following exchange with the VE regarding the consistency between the VE's opinion and the DOT:

> Q      Mr. Bierley, is your testimony today consistent with the [DOT] and its companion publication?
>
> A      It is consistent.  However, absenteeism and off-task issues are not addressed within the resource materials noted.  And for those issues, I did rely on my 30-plus years of experience in the vocational field to respond.

(Tr. 100).  When asked if Plaintiff's counsel wanted to follow up with any further questions to the VE, Plaintiff's counsel indicated that he did not have any follow-up questions (Tr. 100).  Subsequently, in rendering the decision, the ALJ considered this testimony from the VE in concluding, at step five of the evaluation process, that

Plaintiff retained the ability to perform the jobs of final assembler, inspector, and table worker and thus was not disabled (Tr. 23).

Essentially, Plaintiff argues that the exchange between the ALJ and VE regarding conflicts with the DOT did not satisfy the ALJ's duty under SSR 00-4p because an apparent conflict exists between the RFC, which includes a sit/stand option and occasional stooping, and the VE's testimony that Plaintiff could perform the jobs of final assembler, inspector, and table worker, each which generally require no stooping.  As noted, Plaintiff contends that the DOT does not contemplate a sit/stand option, such that the failure of the ALJ to address the inconsistency between the VE's testimony and the DOT warrants remand.  According to Plaintiff, if she needed to stand for more than one-third of the day to perform the jobs, she would necessarily need to stoop, and thus would be required to perform more than occasional stooping, thereby establishing an apparent conflict and eliminating the jobs of final assembler, inspector, and table worker.

While the Court appreciates Plaintiff's position, Plaintiff's argument is unavailing.  The crux of Plaintiff's argument is this: "The [DOT] and Selected Characteristics of Occupations does not address the need for a sit/stand option. Therefore, it is axiomatic that the testimony of the [VE] is inconsistent with information contained in the [DOT]" (Doc. 23, at 6).  Several courts considering the issue have concluded that the DOT's silence on the availability of jobs with a sit/stand option precludes the argument that an apparent conflict can exist with a VE's testimony.  *See, e.g., Campbell v. Comm'r of Soc. Sec.*, Case No. 6:18-CV-2189-

Orl-MAP, 2019 WL 6463983, at *6 (M.D. Fla. Dec. 2, 2019) ("The DOT's silence on the availability of jobs with a sit/stand option means that there is not 'apparent conflict' with the VE's testimony."); *Diaz v. Saul*, No. 3:19-cv-00272 (WIG), 2019 WL 5587024, at *3 (D. Conn. Oct. 30, 2019) (indicating that no conflict existed between the DOT and the VE's testimony because the DOT does not address the availability of a sit/stand option); *Moslow v. Berryhill*, 1:16-cv-00198-MAT, 2019 WL 1508045, at *5 (W.D.N.Y. Apr. 4, 2019) ("Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT."); *Corvin v. Berryhill*, 5:17-cv-92-RJC-DSC, 2018 WL 3738226, at *6 (W.D.N.C. Aug. 7, 2018) (concluding that, because the DOT remains silent as to a sit/stand option, there was no conflict between the VE's testimony and the DOT and that, when the DOT is silent, the ALJ retains greater leeway to rely on the experience and testimony of the VE); *Wellington v. Astrue*, No. 12 CIV. 3523(KBF), 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013) ("Because the DOT does not address the availability of a sit/stand option, it cannot contradict the vocational expert's testimony which endorsed such an option.").  The Court finds such reasoning persuasive and concludes that an apparent conflict does not exist between the VE's testimony and the DOT in this instance, as the DOT is silent regarding a sit/stand option.

Beyond that, it is clear from the VE's testimony during the administrative hearing that the VE fully considered the sit/stand option in opining that Plaintiff could perform the jobs requirements of a final assembler, inspector, and table

worker (Tr. 97-100).  The hypothetical explicitly included the sit/stand option, and, given that limitation, in conjunction with the other limitations set forth by the ALJ, the VE opined that Plaintiff could not perform Plaintiff's past work but instead could perform three representative sedentary jobs (Tr. 98-99).  Further, in rendering his opinion, the VE indicated that he considered statistics, *The Occupational Clinic Quarterly*, and the *Occupational Outlook Handbook* and, to the extent that the DOT did not address absenteeism and off-task issues, he relied on his more than 30 years of experience in the vocational field to respond (Tr. 100).  While the VE did not specifically refer to the sit/stand option as not being addressed by the DOT, Plaintiff explicitly acknowledges and concedes that the DOT does not address the sit/stand option (Doc. 23, at 6).  The VE provided a sufficient basis for his opinion generally and for the difference between his opinion and the DOT, including statistics, vocational resources, and more than 30 years of experience in the field.  The VE's testimony is thus not rendered deficient by failing to explicitly reference the fact that the DOT does not address a sit/stand option, especially where neither party disputes that fact.

Finally, Plaintiff's argument remains speculative, at best.  Plaintiff contends that she *may* be required to stand more than one-third of the day, which would lead to her being required to stoop more than one-third of the day.  The record provides no evidence to support such conjecture.  For example, during the administrative hearing, which lasted 45 minutes, Plaintiff stood up and sat back down on two occasions (Tr. 73, 101-02, 103).  The ALJ specifically noted that Plaintiff "stood up

at 11:51, and sat back down at 11:55, and then stood up again at 12:02 p.m., and sat back down at 12:03 p.m." (Tr. 101-02).  Plaintiff therefore stood for 5 out of 45 minutes, or one-ninth of the time.  Although the Court does not suggest that an ALJ engage in "sit and squirm jurisprudence"[3] assessing disability based upon an index of traits the ALJ expects a claimant to manifest at the hearing, nor that Plaintiff's actions during the hearing and during the workday are necessarily the same, the record from the hearing merely illustrates that Plaintiff did not need to stand for more than one-third of the time, as Plaintiff argues she would likely be required. For the foregoing reasons, therefore, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

## IV.

Accordingly, after consideration, it is hereby

ORD ERED:

1.   The decision of the Commissioner is AFFIRMED.

2.   The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 30th day of August, 2021.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

---

[3]  *See Wilson v. Heckler*, 734 F.2d 513, 517-18 (11th Cir. 1984).